# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> STERLING LEE CLARK, <br><br> Defendant. | No. CR11-3034-LTS <br><br> **MEMORANDUM OPINION AND ORDER** |

## I.   INTRODUCTION

This case is before me on defendant Sterling Lee Clark's motion (Doc. No. 79) for compassionate release. Clark has filed a supporting brief (Doc. No. 80), the Government has filed a response (Doc. No. 81) and Clark has filed a reply (Doc. No. 84). Oral argument is not necessary. *See* Local Rule 7(c).

## II.   BACKGROUND

On December 28, 2011, Clark pleaded guilty to one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *See* Doc. No. 16. On April 9, 2012, the court sentenced Clark to 57 months' imprisonment and imposed a three-year term of supervised release. *See* Doc. Nos. 35, 37. On or about June 10, 2016, Clark was released from BOP custody. *See* Doc. No. 48 at 1.

On November 14, 2017, the court revoked his supervised release and sentenced him to 24 months' imprisonment followed by a 12-month term of supervised release. *See* Doc. No. 59. Clark had violated his conditions of supervised release by failure to comply with drug testing, incurring multiple law violations involving controlled substances, possession of a controlled substance, associating with a person engaged in criminal

activity and failure to comply with drug testing. *See* Doc. No. 56, 57. His first violation of failing to comply with drug testing occurred on June 25, 2016, and the law violations occurred in August and September 2016. *See* Doc. No. 48. Clark was released from custody on or about August 12, 2019. *See* Doc. No. 62 at 1.

On November 7, 2019, Clark's conditions of supervision were modified without hearing to include 40 hours of community service work to be completed within 45 days. Doc. No. 64 at 2. The modification was based on use of controlled substances in October 2019. *Id.*

On January 3, 2020, I revoked Clark's supervised release again and sentenced him to 10 months' imprisonment with no supervised release to follow. *See* Doc. No. 69. Clark had violated his conditions of supervised release by using a controlled substance in November 2019. Doc. Nos. 64, 65. Clark is now 29 years old. According to the online Bureau of Prisons (BOP) inmate locator, Clark is currently at Terre Haute FCI and his projected release date is November 2, 2020.

### III.　　COMPASSIONATE RELEASE STANDARDS

A court's ability to modify a sentence after it has been imposed is extremely limited. One way a court may modify a sentence is through "compassionate release" as outlined in 18 U.S.C. § 3582(c)(1)(A), which was recently modified by the First Step Act of 2018 (FSA). *See* Pub. L. No. 115-391, § 603. In the past, 18 U.S.C. § 3582(c)(1)(A) permitted a court to reduce a defendant's term of imprisonment only upon the motion of the Director of Bureau of Prisons (BOP). The FSA modified § 3582(c)(1)(A) such that a defendant may now directly petition the court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See Mohrbacher v. Ponce*, No. CV18-00513, 2019 WL 161727, at *1 (C.D. Cal. Jan. 10, 2019) (discussing modifications made to § 3582(c)(1)(A) by the FSA); *see also United*

*States v. Perez-Asencio*, No. CR18-3611, 2019 WL 626175, at *2–3 (S.D. Cal. Feb. 14, 2019).

If a defendant fully exhausts administrative remedies, the court may, upon motion of the defendant, reduce the defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, if the court finds that:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . .

18 U.S.C. § 3582(c)(1)(A). Clark does not meet the requirements of § 3582(c)(1)(A)(ii). He is under 70 years of age and has not served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c). *See* Doc. No. 80 at 2. Accordingly, Clark's only possible avenue for relief is § 3582(c)(1)(A)(i).

The starting point in determining what constitutes "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i) is the Sentencing Guideline discussing compassionate release issued by the United States Sentencing Commission. *See* U.S.S.G. § 1B1.13 (U.S. Sentencing Comm'n 2018); *see also United States v. Hall*, No. CR98-7, 2019 WL 6829951, at *3 (E.D. Ky. Dec. 13, 2019); *United States v. Rivernider*, No. CR10-222, 2019 WL 3816671, at *2 (D. Conn. Aug. 14, 2019). The Guideline provides that extraordinary and compelling reasons exist in the following circumstances:

> (A) Medical Condition of the Defendant.—
>
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic

> > solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> > (ii) The defendant is—
>
> > > (I) suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

This Guideline predates the FSA and has "not been amended to reflect that, under the FSA, a defendant may now move for compassionate release after exhausting administrative remedies." *Rivernider*, 2019 WL 3816671, at *2. Courts are split on whether the policy statement is binding because it predates the FSA's changes to 18 U.S.C. § 3582(c)(1)(A). A number of district courts have concluded that Guideline § 1B1.13 cmt. n.1 does not restrain a court's assessment of whether extraordinary and compelling reasons exist to release a defendant. *See, e.g.*, *United States v. Rodriguez*,

424 F. Supp. 3d 674, 681 (N.D. Cal. 2019); *United States v. Urkevich*, No. CR03-37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019); *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019); *United States v. Fox*, No. CR14-03, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019). Other courts have concluded that extraordinary and compelling reasons exist only if they are included in the Guideline. *See, e.g.*, *United States v. Lynn*, No. CR89-0072, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019).

As I have previously stated, I agree with those courts that have found that although the Guideline provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the recent statutory changes. *See United States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020); ); *see also Rodriguez*, 424 F. Supp. 3d at 682 (Congress knew that the BOP rarely granted compassionate release requests prior to the FSA, and the purpose of the FSA is to increase the number of compassionate release requests granted by allowing defendants to file motions in district courts directly even after the BOP denies their request); *Brown*, 411 F. Supp. 3d at 451 (same).

## IV. DISCUSSION

### A. *Exhaustion of Administrative Remedies*

It is unclear whether Clark submitted an administrative request for compassionate release to his warden, what his request was based on or when it was sent because Clark has not submitted a copy of the request, nor a response from the warden. Clark states that on May 5, 2020, he informed his counsel that, approximately 46 days earlier, the warden had denied his compassionate release request. *See* Doc. No. 80 at 2. Clark's counsel requested a copy of Clark's compassionate release request as well as the warden's denial, from the Government. The Government states that after making "several inquiries", it has been informed by BOP counsel that BOP staff at FCI Terre Haute has

5

not found any documentation of Clark's request nor any response by the warden. Doc. No. 81 at 9-10. Clark argues I should find he has exhausted his administrative remedies under these circumstances because 30 days has passed since the time he claims to have submitted his request to the warden. Doc. No. 80 at 4-5.

Section 3582(c)(1)(A) unambiguously instructs that a defendant can only bring a motion for compassionate release in federal court "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." I agree with the majority of courts to weigh in on this issue that the statutory text of § 3582(c)(1)(A) makes it clear that a court cannot entertain a compassionate release motion unless a defendant has exhausted administrative remedies—even in light of the COVID-19 pandemic. *See United States v. Smith*, No. CR09-3038-LTS, 2020 WL 2844222, at *5 (N.D. Iowa June 1, 2020) (collecting cases). "Defendant bears the burden of showing that he exhausted his administrative remedies with the BOP before filing a compassionate-release motion." *United States v. Kinley*, No. 1:16-cr-10018-002, 2020 WL 2744110, at *2 (W.D. Ark. Apr. 17, 2020).

Clark has not submitted *any* evidence – not even an affidavit – to support his assertion that he submitted a request to the warden more than 30 days ago. As such, I find that he has failed to meet his burden showing that he exhausted administrative remedies. His motion is denied on this basis. However, I find the merits of his motion provide an alternative basis for denying his motion even if he had exhausted his administrative remedies.

### B. *Extraordinary and Compelling Reasons*

Clark argues that the threat the COVID-19 pandemic poses to him, in light of his morbid obesity, asthma, hypertension and type 2 diabetes with mellitus, constitutes extraordinary and compelling reasons. Doc. No. 80 at 9. The Government argues that

6

the mere existence of COVID-19, as a general threat to every non-immune person, is insufficient to warrant a sentence reduction. Doc. No. 81 at 13. It acknowledges that the CDC lists people with diabetes, serious heart disease and severe obesity as being at high risk for severe illness from COVID-19. *Id.* at 15.[1] Therefore, it notes I could conclude that Clark is "suffering from a serious physical or medical condition" under USSG § 1B1.13, cmt. n.1(A)(ii) but argues Clark's medical condition does not rise to the level of severity required under the policy statement. *Id.* at 16-17. Under the policy statement, the condition must be one "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, cmt. n.1(A)(ii).

The Government points out that Clark is 29 years old and is designated at Care Level 1, which is for healthy or simple chronic care. Doc. No. 81 at 16-17. It also notes that Clark's medical conditions are properly monitored and controlled,[2] reducing his risk level for severe complications from COVID-19. *Id.* at 17. Further, it notes FCI Terre Haute has only four positive cases and one inmate death from COVID-19[3] and that

---

[1] *See* Centers for Disease Control, *People Who Are at Higher Risk for Severe Illness* at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

[2] Clark acknowledges that his medical records reflect his blood pressure is in a "good range and that his asthma and diabetes are stable. *See* Doc. No. 80 at, 9, n.3. However, he notes that his most recent medical records show his glucose level was high despite his diabetes medication. *Id.* (citing Doc. No. 80-2 at 3). In late June 2020, Clark complained of worsening asthma for which he was prescribed a steroid inhaler. *See* Doc. No. 87 at 8. Updated labs were also ordered to review his diabetic management. *Id.* In late July, he did not note any respiratory distress during his appointment and staff was waiting on his A1c results to determine future diabetes management. *Id.* at 2-3.

[3] FCI Terre Haute now reports zero positive cases and one inmate recovery. *See Covid-19 Cases*, Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited August 4, 2020).

7

Clark's proposed release location to Fort Dodge, Iowa, in Webster Count, has had 436 positive cases with 163 recovered and five deaths.[4]

There appears to be no dispute that Clark's medical conditions would increase his risk of serious illness if infected with COVID-19. While I appreciate that the BOP has taken many measures to prevent the transmission of COVID-19 among its inmate population,[5] the virus has nonetheless spread through many BOP facilities.[6] As of August 4, 2020, one inmate had tested positive for COVID-19 and recovered at Clark's facility, Terre Haute FCI.[7] Even though it appears COVID-19 is well-controlled at Clark's facility, Clark is still at risk of contracting it. Clark's health conditions of morbid obesity, asthma, hypertension and diabetes, when viewed in the context of the current COVID-19 pandemic, at least arguably constitute an extraordinary and compelling reason for release. Therefore, I will consider whether granting Clark's motion would be appropriate considering the § 3553(a) factors.

---

[4] Webster County now reports 728 positive cases with 357 recovered and six deaths. *See COVID-19 in Iowa*, https://coronavirus.iowa.gov/#CurrentStatus (last visited August 4, 2020).

[5] According to the BOP's website, those measures have included limiting inmate movement within each facility and between facilities, suspending visits, suspending staff training and travel, screening staff and inmates for COVID-19 symptoms and modifying operations to maximum social distancing to the extent possible. *BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited August 4, 2020).

[6] Other BOP facilities have experienced COVID-19 outbreaks. For example, as of August 4, 2020, 666 inmates, or 61 percent of inmates, have tested positive for COVID-19 at Butner Low FCI, and 16 of those have died. At Elkton FCI, 1,010 inmates (46 percent of inmates) have tested positive, and 9 of those have died. At Seagoville FCI, 1,321 inmates (75 percent of inmates) have tested positive, and 3 of those have died. *COVID-19 Cases*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited August 4, 2020).

[7] Terre Haute USP, however, (within the same federal complex as Terre Haute FCI) has had 9 positive cases with 0 current positives, 8 recovered and 1 inmate death. *COVID-19 Cases*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited August 4, 2020).

*C.     Section 3553(a) Factors and Danger to Community*

Guideline § 1B1.13(2) provides that compassionate release is appropriate only where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]"  Additionally, § 3582(c)(1)(A) requires a court to consider the factors set forth in 18 U.S.C. § 3553(a) before granting a motion for compassionate release.  Section 3553(a) requires that I consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . .;]
>
> (5) any pertinent policy statement [issued by the Sentencing Commission . . .']
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Clark has served approximately seven months of his ten-month revocation sentence.  Upon release he plans to reside at his mother's home in Fort Dodge, Iowa.  Doc. No. 80-5.

9

As discussed above, Clark may be at an increased risk of severe illness from COVID-19, but his conditions are well-managed on medications. More importantly, releasing Clark now, when he is serving his second revocation sentence, would undermine the need for the sentence imposed, including the need to reflect the seriousness of the offense, afford adequate deterrence and protect the public from further crimes. Clark has consistently demonstrated that he is unwilling to follow the conditions of his supervised release and abide by the law. He has had his supervised released revoked two times – once for controlled substances law violations and use of a controlled substance and once for use of controlled substances. Each revocation was based on violations that occurred within months after being released from prison. Releasing him now, with no term of supervised release to follow, would not adequately deter Clark in light of his repeated violations.

Based on my consideration of the factors set forth in 18 U.S.C. § 3553(a), Clark is not entitled to compassionate release.

### V. CONCLUSION

For the foregoing reasons, Clark's motion (Doc. No. 79) for compassionate release is **denied**. The Clerk's office is directed to provide a copy of this order to the institution where Clark is incarcerated.

**IT IS SO ORDERED.**
**DATED** this 5th day of August, 2020.

_____
Leonard T. Strand, Chief Judge